UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

THE ESTATE OF YARON UNGAR, *et al.*,

    Plaintiffs,

v.

THE PALESTINIAN AUTHORITY, *et al.*,

    Defendants.

------------------------------------------------------------x

Misc. Case No.:

(D.R.I. Case No.: CA 00-105L (RRL))

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 0 1 2010 ★
BROOKLYN OFFICE

MISC 10-0593
JOHNSON

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS**

Charles L. Kerr
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8000

*Pro Se for Morrison & Foerster LLP and as Counsel for Mark David McPherson*

ny-939006

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

I.     PLAINTIFFS HAVE NO RIGHT TO DISCOVERY CONCERNING THE PENSION FUND AT THIS POINT IN THE RHODE ISLAND ACTION ..................... 5

II.    BECAUSE THE DEPOSITION SUBPOENA IMPROPERLY THREATENS THE ATTORNEY-CLIENT RELATIONSHIP WHEN ALTERNATIVE, LESS BURDENSOME METHODS ARE AVAILABLE TO PROVIDE THE SAME INFORMATION, IT SHOULD BE QUASHED ............................................................ 8

    A.    Because they Jeopardize the Attorney-Client Relationship and Undermine the Adversarial System, Depositions of Opposing Counsel Are Disfavored ........ 9

    B.    Depositions of Counsel Must Be Weighed Against the Risk of Encountering Privilege and Work-Product Issues ................................................ 10

    C.    Alternative Sources of Information that Do Not Implicate the Attorney-Client Privilege Are Readily Available ............................................................ 11

CONCLUSION ............................................................................................................................ 12

ny-939006

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brabson v. Friendship House*,
  No. 94 CV 0834, 1997 U.S. Dist. LEXIS 11830 (W.D.N.Y. Aug. 8, 1997) ............................. 6

*CreditSights, Inc. v. Ciasullo*,
  No. 05 Civ. 9345, 2009 U.S. Dist. LEXIS 106469 (S.D.N.Y. Nov. 10, 2009) ................. 10, 12

*Estate of Ungar v. The Palestinian Authority*,
  00-CV-105 (D.R.I.) ............................................................................................................... 1

*In re Subpoena Issued to Dennis Friedman*,
  350 F.3d 65 (2d Cir. 2003) .................................................................................................. 10

*Integra Lifesciences I, Ltd. v. Merck KgaA*,
  190 F.R.D. 556 (S.D. Cal. 1999) ........................................................................................... 7

*Jones v. Nat'l Am. Univ.*, No. 06 CV 5075, 2008 U.S. Dist. LEXIS 82384, at *6 (D.S.D.
  Oct. 16, 2008) ....................................................................................................................... 7

*Liberty Mut. Fire Ins. Co. v. Centimark Corp.*,
  No. 4:08 CV 230, 2009 U.S. Dist. LEXIS 50782 (E.D. Mo. June 16, 2009) ........................ 7

*Magnaleasing, Inc. v. Staten Island Mall*,
  76 F.R.D. 559 (S.D.N.Y. 1977) ............................................................................................ 6

*McKay v. Triborough Bridge & Tunnel Auth.*,
  No. 05 Civ. 8936, 2007 U.S. Dist. LEXIS 81722 (S.D.N.Y. Nov. 2, 2007) ......................... 7

*Medimmune, LLC v. PDL Biopharma, Inc.*,
  No. C08-05590, 2010 U.S. Dist. LEXIS 39410 (N.D. Cal. Apr. 1, 2010) ......................... 6, 7

*Overton v. Todman & Co.*,
  No. 05 Civ. 7956, 2009 U.S. Dist. LEXIS 90867 (S.D.N.Y. Sept. 24, 2009) ....................... 9

*Patsy's Italian Rest., Inc. v. Banas*,
  Nos. 06-CV-00729, 06-CV-5857, 2007 U.S. Dist. LEXIS 4114 (E.D.N.Y. Jan. 19,
  2007) ............................................................................................................................. 11, 12

*Playboy Enters. Int'l, Inc. v. On Line Entm't, Inc.*,
  No. 00-CIV-6618, 2003 U.S. Dist. LEXIS 26867 (E.D.N.Y. Mar. 13, 2003) ....................... 8

*Sea Tow Int'l, Inc. v. Pontin*,
  246 F.R.D. 421 (E.D.N.Y. 2007) .......................................................................................... 9

ny-939006

*The Estate of Yaron Ungar, et al. v. The Palestinian Authority, et al.*,
    Index No. 102101/06 (N.Y. Sup.) ..........................................................................4 n. 4

*Ungar v. The Palestine Liberation Organization*,
    599 F.3d 79 (1st Cir. 2010) ..........................................................................................3

*Williamson v. Horizon Lines, LLC*,
    248 F.R.D. 79 (D. Me. 2008) .......................................................................................7

*Yash Raj Films (USA) v. Kumar*,
    No. 05-CV-3811, 2007 U.S. Dist. LEXIS 79344 (E.D.N.Y. Oct. 25, 2007) ................9

**STATUTES**

Fed. R. Civ. P. 69(a)(2) ........................................................................................................5

**OTHER AUTHORITIES**

9-45 Moore's Federal Practice — Civil § 45.03 .................................................................6

13-69 Moore's Federal Practice — Civil § 69.04 ...............................................................6

ny-939006

Non-parties Morrison & Foerster, appearing *pro se*, and Mark David McPherson submit this brief in support of their motion to quash two subpoenas purportedly issued from this Court by the Estate of Yaron Ungar, et al. ("Plaintiffs"), pursuant to Fed. R. Civ. P. 69(a)(2). The first subpoena, dated August 26, 2010, commands Mr. McPherson, a Morrison & Foerster partner and one of the attorneys representing proposed intervenor The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip (the "Pension Fund" or "Fund"), to appear at a deposition on September 3, 2010 (the "Deposition Subpoena"). (Kerr Decl.,[1] Ex. A.) The second subpoena, dated August 27, 2010, directs Morrison and Foerster LLP, counsel to the Pension Fund, to produce, by September 2, 2010, certain communications with financial institutions concerning the Pension Fund (the "Document Subpoena"; collectively, the "Subpoenas"). (*Id.*, Ex. B.)

## PRELIMINARY STATEMENT

Plaintiffs' counsel has issued two subpoenas from this Court in an effort to conduct discovery in connection with the Pension Fund's motion to intervene in an action entitled *Estate of Ungar v. The Palestinian Authority*, 00-CV-105 (D.R.I.), which is currently pending in the United States District Court for the District of Rhode Island (the "Rhode Island Action"). More than six years ago, on July 14, 2004, Plaintiffs obtained a final judgment in the Rhode Island Action against the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO). After the final judgment was affirmed on appeal, Plaintiffs persuaded the District Court to enter a post-judgment, preliminary injunction (the "Injunction") prohibiting the PA and the PLO, or those acting in concert with them, from transferring any assets of the PA and the PLO. Plaintiffs then unilaterally expanded the Injunction, by sending out to various financial institutions and

---

[1] The Declaration of Charles L. Kerr, dated September 1, 2010, is cited as "Kerr Decl. ¶ __." The Exhibits attached to the Kerr Declaration are cited as "Kerr Decl., Ex. __".

other firms "Notices of Injunction" that alleged — without any basis — that the PA's assets were titled in various other names, including permutations of the Pension Fund's name, and that the Injunction therefore applied to the Pension Fund's assets. As a result, Plaintiffs have restrained more than $100 million worth of the Pension Fund's assets in New York since 2005. On August 18, 2010, the Pension Fund sought leave to intervene in the Rhode Island Action for the limited purpose of moving to vacate or modify that Injunction (the "Injunction Motion"). The Plaintiffs served the Subpoenas in response to that motion to intervene.

The discovery Plaintiffs seek is improper in two respects. First, because of the procedural posture of the Rhode Island Action, Plaintiffs are not entitled to conduct any discovery with respect to the Pension Fund or its pending motion to intervene in that action. Second, because the Deposition Subpoena is directed to the Pension Fund's litigation counsel, it risks leading to the disclosure of information protected by the attorney-client privilege and threatens to interfere with the adversarial system. Because the Subpoenas (1) constitute unauthorized discovery, and (2) seek this improper discovery from attorneys about actions taken as counsel to their clients when alternative, non-privileged sources for the same information are readily available, this Court should grant the motion to quash.

## BACKGROUND[2]

Default judgment was entered against two Judgment Debtors, the PA and PLO, in the Rhode Island Action more than six years ago. The Pension Fund was not a party to and had no involvement in that Action. The PA and PLO's motion to vacate that default judgment is

---

[2] The procedural and factual background of this decade-old case is long and largely irrelevant to the Subpoenas and this Motion to quash. We therefore limit any discussion concerning the background facts only to those necessary to address this motion to quash. A more complete history is provided in the recent motion made by the Pension Fund in the District of Rhode Island. That motion, along with the supporting brief and declaration, are attached, respectively, as Exhibits C, D and E to the Kerr Declaration.

currently pending before the District of Rhode Island. *See Ungar v. The Palestine Liberation Organization*, 599 F.3d 79 (1st Cir. 2010).

In May 2005, shortly after the Plaintiffs' default judgment was originally affirmed on direct appeal, the District of Rhode Island entered an injunction prohibiting the PA and the PLO, or those acting in concert with them, from transferring any assets of the PA and the PLO (the "Injunction") out of the United States. (Kerr Decl. Exs. D, E.) Plaintiffs sought to expand the reach of that Injunction by sending out to various financial institutions and other firms "Notices of Injunction" prepared by Plaintiffs' counsel. Those Notices alleged — without any basis — that the PA's assets were titled in various names, including permutations of the Pension Fund's name. (*Id.*) At that time, over $100 million in Pension Fund assets were being held in a custodial account at Swiss American Securities, Inc. ("SASI") in New York and were being actively invested and managed by the Pension Fund's investment managers. After receiving the Notice of Injunction, SASI froze the custodial account, thereby preventing the assets from being managed. (*Id.*) As a result, for more than five years, Plaintiffs have used the Injunction and the threat of further litigation to improperly restrain more than $100 million of assets belonging to the Pension Fund, without providing any security for that restraint. (*Id.*)[3]

To redress Plaintiffs' improper restraint, the Pension Fund recently moved to intervene in the Rhode Island Action for the limited purpose of challenging the Injunction. (Kerr Decl., Ex.

---

[3] The Pension Fund is a legal entity separate from the Palestinian Authority. (Affidavit of Farouk M. A-Franji Aff. sworn to April 4, 2007, ¶ 7 (cited as "A-Franji Aff.").) It was created by statute over forty years ago and is currently responsible for managing a pension system for the benefit of certain categories of municipal employees who work in the Palestinian Territories. (*Id.*) It has over 50,000 participants and between 5,000 and 6,000 current beneficiaries. (*Id.*) There is currently no judgment outstanding against the Pension Fund. The A-Franji Affidavit was also attached as Exhibit A to the declaration of Mark David McPherson, submitted in support of the Rhode Island Motion, dated August 17, 2010. The McPherson Declaration, together with the attached A-Franji Affidavit, is attached as Exhibit E to the Kerr Declaration submitted in support of the present motion.

C.)[4] In that Injunction Motion, the Fund sought to vacate the Injunction, or, in the alternative, to limit its duration and require Plaintiffs to post a bond to protect the Fund from continuing damages arising from the ongoing restraint of its assets. (*Id.*) Claiming that they are acting pursuant to Fed. R. Civ. P. 69(a)(2), Plaintiffs issued the Subpoenas to gain discovery related to the Pension Fund's argument in its motion papers that Plaintiffs should be required to a post a bond if the Injunction is continued. (Kerr Decl. ¶ 8 & Ex. J.)

Among other things, the Pension Fund's Injunction Motion demonstrated the ways in which the Injunction has damaged its assets, including by interfering with the Fund's efforts to secure a financial institution to provide full custodial services with respect to the assets. In support of its motion to intervene, the Fund submitted the Declaration of Mark David McPherson, dated August 17, 2010, a partner at Morrison & Foerster acting as the Pension Fund's outside litigation counsel. (Kerr Decl., Ex. E). In his Declaration, Mr. McPherson described the Pension Fund's efforts to approach a number of different financial institutions to request that they serve as custodians of the frozen assets following the shut down of SASI's operations. (*Id.* (¶¶ 27-31).) These financial institutions have each declined to serve as custodians, and have indicated that they refused to do so because of, among other things, the Injunction and the associated litigation. (*Id.*) Because it has been unable to secure a new custodian, the Pension Fund has been unable to manage the investment of the frozen assets, and has lost — and will continue to lose — millions of dollars over the duration of the Injunction. (*Id.* (¶¶ 31-35).)

---

[4] Since early 2006, the Pension Fund and the Ungars have been litigating in the New York State courts the issue of ownership of the frozen assets held at SASI. *See The Estate of Yaron Ungar, et al. v. The Palestinian Authority, et al.*, Index No. 102101/06 (N.Y. Sup.). Because SASI, an affiliate of Credit Suisse, closed down its New York operations in late 2008, the assets are currently being held by Credit Suisse Securities LLC New York (Investment Banking Unit) ("CSSU NY"), which does not offer or provide custodial services. (*See* Kerr Decl., Exs. D, E.)

Rather than respond to the Injunction Motion or seek permission from the District Court in Rhode Island to serve discovery in connection with that Motion, Plaintiffs instead served Rule 45 non-party subpoenas on the Fund's attorneys for a deposition and for the production of documents relating to communications between the Fund's counsel and possible custodians. Simultaneously with this motion to quash, filed pursuant to Fed. R. Civ. P. 45(c)(3), the Pension Fund is serving Objections and Responses to the Document Subpoena pursuant to Fed. R. Civ. P. 45(c)(2)(B). (Kerr Decl., Ex. F.)

## ARGUMENT

The Subpoenas are inappropriate for at least two reasons. First, they constitute an unsanctioned attempt to conduct discovery outside of the bounds of Federal Rule 69, which is limited solely to discovery in aid of enforcing a money judgment or execution. Fed. R. Civ. P. 69(a)(2). Second, the Deposition Subpoena threatens the Pension Fund's relationship with its counsel — a disruption unwarranted since the same information is available from either non-privileged sources or through simple interrogatories. For these reasons, movants respectfully request that this Court grant their motion to quash the Subpoenas.

### I. PLAINTIFFS HAVE NO RIGHT TO DISCOVERY CONCERNING THE PENSION FUND AT THIS POINT IN THE RHODE ISLAND ACTION.

The only basis Plaintiffs have asserted as authority for the discovery they seek — Fed. R. Civ. P. 69 (*see* Kerr Decl., Ex. J) — does not apply here. Rule 69 only permits discovery "in aid of a money judgment or execution" as part of a judgment enforcement proceeding. Fed. R. Civ. P. 69(a)(2). The Pension Fund is not a judgment debtor. Moreover, the discovery Plaintiffs are seeking in connection with the Pension Fund's motion to intervene is not "in aid of a money judgment or execution"; rather, that discovery relates solely to the ongoing validity of the Rhode Island Court's Injunction and the Pension Fund's request for a bond if the Injunction is not

immediately vacated with respect to its assets. Courts in the Second Circuit have made clear that any post-judgment discovery under Rule 69 is circumscribed and limited to issues about the amount and whereabouts of assets that may be used to satisfy the judgment. *See, e.g., Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977) ("The rule authorizes discovery by a judgment creditor for the purpose of discovering any concealed or fraudulently transferred assets. The scope of discovery, however, is circumscribed by this purpose."); *Brabson v. Friendship House*, No. 94 CV 0834, 1997 U.S. Dist. LEXIS 11830, at *2 (W.D.N.Y. Aug. 8, 1997) ("Generally speaking, the scope of such discovery is limited to information regarding the assets of the judgment-debtor."); 13-69 Moore's Federal Practice — Civil § 69.04 ("The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied. . .The discovery must be relevant to that purpose . . . ."). The discovery sought by Plaintiffs from the Pension Fund's counsel does not fall within that category and is not directed to any "whereabouts of assets that may be used to satisfy the judgment."

In addition, subpoenas issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, such as the Deposition Subpoena and the Document Subpoena at issue here, cannot be used to conduct discovery outside of the bounds of Rule 26, as limited in post-judgment proceedings by Rule 69. *See* 9-45 Moore's Federal Practice — Civil § 45.03 ("If a Rule 45 subpoena is served in conjunction with discovery, the deposition testimony or production sought must fall within the scope of proper discovery under Rule 26(b)(1). . . . If the deposition testimony or production sought by a subpoena is not the proper subject of discovery, the person served with the subpoena may move to quash or modify it on that ground."). A Rule 45 subpoena itself constitutes discovery, and parties may not use a subpoena to obtain discovery from third parties after the close of discovery. *See, e.g., Medimmune, LLC v. PDL Biopharma,*

*Inc.*, No. C08-05590, 2010 U.S. Dist. LEXIS 39410, *4-*5 (N.D. Cal. Apr. 1, 2010) ("the better view (espoused by the majority of jurisdictions) is that, with certain exceptions not present here, Fed. R. Civ. P. 45 subpoenas constitute pretrial discovery that must be served within the specified discovery period.") (citing cases); *Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, No. 4:08 CV 230, 2009 U.S. Dist. LEXIS 50782, at *2 (E.D. Mo. June 16, 2009) ("defendant's subpoena is an improper attempt to engage in discovery after the cut-off date, and [the Court] will grant plaintiff's motion to strike. Investigation and continued discovery after a discovery cut-off 'may not invoke the authority of the court (*i.e.*, the issuance of a subpoena under Rule 45).'") (citing cases); *Williamson v. Horizon Lines, LLC*, 248 F.R.D. 79, 83 (D. Me. 2008) ("there is a relationship between Rule 26 and Rule 45 and 'parties should not be allowed to employ a subpoena after a discovery deadline to obtain materials from third parties that could have been produced before discovery.'") (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2452 (3rd ed. 2008)); *Jones v. Nat'l Am. Univ.*, No. 06 CV 5075, 2008 U.S. Dist. LEXIS 82384, at *6 (D.S.D. Oct. 16, 2008) ("Rule 45 Subpoenas, which are intended to secure the pretrial production of documents and things, are encompassed within the definition of 'discovery,' as enunciated in Rule 26(a)(5) and, therefore, are subject to the same time constraints that apply to all of the other methods of formal discovery.") (internal citation omitted); *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936, 2007 U.S. Dist. LEXIS 81722 at *5 (S.D.N.Y. Nov. 2, 2007) (construing subpoena issued after the close of discovery as a motion to reopen discovery; granting motion to quash because "service of a Rule 45 trial subpoena after the close of discovery is improper.") (collecting cases); *Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case.") (citing cases).

The District Court in Rhode Island has not authorized the Plaintiffs to conduct any discovery in connection with the Pension Fund's Injunction Motion. It has authorized certain limited, post-judgment discovery, solely in connection with the PA and PLO's motion to vacate. (*See* Rhode Island Action, Docket Entry 489 ("all pre-hearing discovery [in connection with the motion to vacate] be completed by November 19, 2010."); *Estates of Ungar v. Palestinian Auth.*, No. 00-105L, 2010 U.S. Dist. LEXIS 58735, at *5 n.5 (D.R.I. May 12, 2010) ("Judge Lagueux has issued an order advising the parties that he will conduct a scheduling conference with the attorneys to establish a schedule for discovery and the filing of pre-hearing memoranda in advance of 'an evidentiary hearing to determine precisely what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter.' Order (Doc. # 482) at 2.").) The Pension Fund is not party to and has no involvement in that motion to vacate, however, and the discovery the Plaintiffs and the defendants are conducting in connection with that separate motion has nothing to do with the Fund's motion to intervene and vacate the Injunction.

Thus, the Subpoenas seek unauthorized discovery. For these reasons, the movants' motion to quash should be granted. *Cf. Playboy Enters. Int'l, Inc. v. On Line Entm't, Inc.*, No. 00-CIV-6618, 2003 U.S. Dist. LEXIS 26867, at *2 (E.D.N.Y. Mar. 13, 2003) (granting motion to quash where "plaintiffs took it upon themselves to serve subpoenas, without prior application to the Court, months after discovery closed, little more than a month before trial, upon a non-party from whom discovery was never before sought.").

ny-939006                                           8

II. **BECAUSE THE DEPOSITION SUBPOENA IMPROPERLY THREATENS THE ATTORNEY-CLIENT RELATIONSHIP WHEN ALTERNATIVE, LESS BURDENSOME METHODS ARE AVAILABLE TO PROVIDE THE SAME INFORMATION, IT SHOULD BE QUASHED.**

Plaintiffs' Deposition Subpoena is directed at the thoughts, mental processes and communications made by Morrison & Foerster as the Pension Fund's litigation counsel. The Deposition Subpoena places no limits on the scope of the deposition that Plaintiffs are seeking of the Pension Fund's counsel. Thus, even if Plaintiffs had a basis on which to seek discovery from the Pension Fund — which they do not — the Deposition Subpoena directed to the Pension Fund's counsel is still improper and should be quashed.[5]

    A. **Because they Jeopardize the Attorney-Client Relationship and Undermine the Adversarial System, Depositions of Opposing Counsel Are Disfavored.**

"In the Second Circuit, 'depositions of opposing counsel are disfavored.'" *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (quoting *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)); *see also Overton v. Todman & Co.*, No. 05 Civ. 7956, 2009 U.S. Dist. LEXIS 90867, *10-*11 (S.D.N.Y. Sept. 24, 2009) ("it is well-established that 'depositions of opposing counsel are disfavored'") (quoting *Yonkers*). This is particularly true when the same information is available from sources that do not threaten to breach attorney-client privilege.

"The rationale behind the presumption against such discovery is that 'even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.'" *Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811, 2007 U.S. Dist. LEXIS 79344, at *11 (E.D.N.Y. Oct. 25, 2007) *Raj Films (USA) v. Kumar*, No.

---

[5] In an effort to avoid this motion practice and as part of a proposed overall compromise that would result in the mutual exchange of information, the Pension Fund proposed that, in lieu of a deposition of its counsel, it would respond to written interrogatories. (Kerr Decl., Ex. G.) Plaintiffs rejected that proposal. (Kerr Decl., Ex. J.)

05-CV-3811, 2007 U.S. Dist. LEXIS 79344, at *11 (E.D.N.Y. Oct. 25, 2007) (quoting *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002)). These cases caution against deposing opposing counsel when other methods of discovery are available, or when the discovery is not truly necessary. The need for such depositions must be weighed against the "'potential to oppress the adverse party and to burden the adversary process itself.'" *Sea Tow Int'l*, 246 F.R.D. at 424 *quoting Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001)).

Forcing the Pension Fund's counsel to appear for a deposition implicates all of these concerns: it threatens to oppress the adverse party and burdens the adversary process itself by disrupting the attorney-client relationship between Morrison & Foerster and the Pension Fund. This would be true even if there were no privileged documents or conversations at issue. *See Yash Raj*, 2007 U.S. Dist. LEXIS 79344, at *11.

**B.    Depositions of Counsel Must Be Weighed Against the Risk of Encountering Privilege and Work-Product Issues.**

The Second Circuit directs courts to look at several factors to determine if discovery from attorneys is appropriate: "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). This "flexible approach" should also assess "the potential for the disruption of the attorney-client relationship, [and] the potential for unnecessary introduction of privilege issues into the lawsuit. . . ." *CreditSights, Inc. v. Ciasullo*, No. 05 Civ. 9345, 2009 U.S. Dist. LEXIS 106469, at *2 (S.D.N.Y. Nov. 10, 2009) (citing cases).

Requiring counsel to appear in response to the Deposition Subpoena would unnecessarily introduce attorney-client privilege and work product issues into this case. Plaintiffs cannot

ny-939006                                   10

dispute that Morrison & Foerster was acting as the Pension Fund's counsel when it communicated with the Pension Fund and with various financial institutions as part of the effort to locate a new custodian for the frozen assets. Thus, any deposition of Mr. McPherson runs the risk of encroaching upon and potentially disclosing attorney-client communications and attorney work product. Even acknowledging that some of his personal knowledge is not, in and of itself, based solely on privileged communications, Mr. McPherson was directly involved in multiple, privileged communications with the Pension Fund and other lawyers at Morrison & Foerster about the custodian issue. (Kerr Decl., ¶ 10.) In other words, his "role in connection with the matter on which discovery is sought" gives rise to a significant "risk of encountering privilege and work-product issues." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 72. These factors outweigh any counter-veiling "need" to depose Mr. McPherson, *see id.*, because, as demonstrated below, other sources for the same (or better) evidence are available.

C.  **Alternative Sources of Information that Do Not Implicate the Attorney-Client Privilege Are Readily Available.**

Even where a party does not seek privileged information from counsel, they must still establish a specific need for the deposition. *Patsy's Italian Rest., Inc. v. Banas*, Nos. 06-CV-00729, 06-CV-5857, 2007 U.S. Dist. LEXIS 4114, *8-*9 (E.D.N.Y. Jan. 19, 2007) ("Although defendants are not seeking privileged information from plaintiff's counsel, they have failed to establish a specific need for the deposition."). Where the same information "can be obtained from alternative means, such as through document requests and interrogatories," no such need is present, and a subpoena should be quashed. *Id* at *9. (citing *ResQnet.com v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 U.S. Dist. LEXIS 13579 (S.D.N.Y. July 21, 2004)).

Plaintiffs have several alternative sources for the information that they seek from counsel.

ny-939006                                  11

x

**First**, Plaintiffs can subpoena the financial institutions contacted by Morrison & Foerster on behalf of the Pension Fund. (At Plaintiffs' request, Morrison & Foerster has already identified the financial institutions that it contacted about acting as a potential custodian.) Although that would mean that Plaintiffs would need to serve additional subpoenas, any such burden is mild when compared to the time required to prepare counsel for a deposition, the care that would be necessary to avoid disclosing privileged information, and the risk that the Deposition Subpoena would impose on the adversarial process.

**Second**, assuming that any discovery is appropriate, the Pension Fund has offered, in lieu of a deposition, to respond to interrogatories that would provide Plaintiffs with all of the information that they demand, but without violating any privilege or disrupting the attorney-client relationship.[6] (Kerr Decl., Ex. G.) Plaintiffs have refused this offer, instead seeking the much more burdensome process of conducting a deposition of opposing counsel to uncover information that could easily be provided through interrogatories. It is unnecessary for Plaintiffs to delve into privileged communications to locate information that is readily available by other, less invasive methods.

Similar alternative sources of information and interrogatories have repeatedly been found sufficient to quash the subpoena of an attorney. *See, e.g., CreditSights*, 2009 U.S. Dist. LEXIS 106469, at *3 (denying deposition of counsel where "the facts relevant to the plaintiff's contacts with law enforcement concerning defendant's alleged criminal misconduct are fully available from others"); *Patsy's Italian Rest.*, 2007 U.S. Dist. LEXIS 4114, at *8-*9.

---

[6] Even undertaking this exercise would be extremely burdensome and time consuming and would require the review of tens of thousands of emails and other documents for privilege. Plaintiffs, however, have rejected this proposal. (Kerr Decl., Ex. J.)

## CONCLUSION

For all of these reasons, Morrison & Foerster LLP and Mr. McPherson respectfully request that this Court quash Plaintiffs' Subpoenas.

Dated: New York, New York
September 1, 2010

MORRISON & FOERSTER LLP

By: _____
Charles L. Kerr

1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
Ckerr@mofo.com

Pro Se *for Morrison & Foerster LLP and as Counsel for Mark David McPherson*